UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN ODOM,

        Plaintiff,

v.

E. COE HILL, MARGARET A. QUILLETTE,
LIZABETH RALLES,
ROSEMARY VILLASAN, and
LISA A. WILLIAMS,

        Defendants.
                                 /

Case No. 1:21-cv-403

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by Steven Odom (referred to as "plaintiff" or "Odom"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Odom has sued Nurse Practitioner (N.P.) E. Coe Hill, Physician Assistant (P.A.) Margaret A. Quellette, Lizabeth Ralles, M.D., R.N. Rosemary Villasan, and R.N. Lisa A. Williams. Compl. (ECF No. 1). This matter is now before the Court on a motion for summary judgment on the basis of exhaustion filed by defendants Villasan and Williams (ECF No. 25).

        **I.**    **Odom's claims**

Odom's complaint (ECF No. 1) recounts his history at the MDOC and includes claims against multiple defendants. This report addresses Odom's claims against two defendants, R.N. Vallasan and R.N. Williams, for the alleged denial of medical care in violation of the Eighth Amendment and retaliation in violation of the First Amendment while he was incarcerated at the Lakeland Correctional Facility (LCF) in 2020.

1

Odom's complaint is a narrative which is not separated into claims or counts. For purposes of this report, the Court will use the 12 claims identified by defendants R.N. Villasan and R.N. Williams. Two of these claims involve defendants Villasan and Williams.

In Claim 6, which appears in ¶¶ 51 through 80 of the complaint (PageID.12-18), Odom alleged that from March 5, 2020, through March 13, 2020, R.N. Villasan failed to provide adequate treatment of the MRSA infection on his right arm, and on the burn on his right shoulder and arm. These allegations form the basis of Odom's Eighth Amendment claim against Villasan.

In Claim 11, which appears in ¶¶ 113 through 122 of the complaint (PageID.21-26), Odom alleged that R.N. Williams conspired with P.A. Hill and issued him a misconduct ticket in retaliation for filing grievances. These allegations form the basis for Odom's First Amendment retaliation claim against Williams.

For his relief, Odom seeks a declaration that defendants violated his federal constitutional rights, compensatory and punitive damages, and an injunction "ordering the Defendants to treat Plaintiff's serious medical needs, and to provide him access to medical personnel with the necessary specialized expertise to diagnose and treat his medical condition(s)" (PageID.32).

## II.    Defendants' motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.   Lack of Exhaustion

#### 1.   Exhaustion requirement

Defendants contend that Odom failed to exhaust his claims against them. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

Defendants have identified two grievances related to Claims 6 and 11.

### a. Grievance LCF-20-07-0723-28c ("723")

Grievance 723 is directed at R.N. Villasan and a number of other individuals, including co-defendant Hill and non-parties Jennifer Meyer, R.N., Subrina Aiken, R.N., J. Flesner, R.N., and "John & Jane Doe". Grievance 723 (ECF No. 26-4, PageID.210). In this grievance, Odom stated that on July 22, 2020, "he received an FOIA request" for his medical files and discovered that the named individuals "have been falsifying, altering, or deleting data from his medical files." *Id*. Among other things, Odom stated that R.N. Villasan failed to treat his burn or infection and that the MDOC and Corizon unjustly charged him co-pays for each condition. *Id*. at PageID.210-211. The grievance was rejected "per PD 03.02.130 – multiple issues, no attempt to resolve prior to filing." *Id*. at PageID.210. Odom was also sent a "Prisoner Notice of Rejections". *Id*. at PageID.212. The rejection was upheld at Steps II and III. *Id*. at PageID.208-209. Based on this record, Odom did not properly exhaust a claim against defendant R.N. Villasan. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, R.N. Villasan's motion for summary judgment should be granted.

### b. Grievance LCF-20-12-1237-27a ("1237")

Grievance 1237 is directed at R.N. Williams. In this grievance, Odom stated that on December 12, 2020, R.N. Williams conspired with co-defendant P.A. Hill to retaliate against Odom for filing grievance(s) against Hill. Grievance 1237 (ECF No. 26-4, PageID.199-200). R.N. Hill later issued Odom a misconduct ticket related to his med line attendance in retaliation for filing the grievances. *Id*. The grievance was rejected "per PD 03.02.130 – related to the hearing process of a misconduct" and "no attempt to resolve w/staff directly involved prior." *Id*. at

PageID.199. The rejection was upheld at Steps II and III. *Id*. at PageID.197-198. Based on this record, Odom did not properly exhaust a claim against defendant R.N. Williams. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, R.N. Williams' motion for summary judgment should be granted.

        **c.    Odom's response**

Defendants R.N. Villasan and R.N. Williams have demonstrated that Odom did not properly exhaust the claims alleged against them in this lawsuit. In his response, Odom attempts to avoid this result by claiming that the MDOC improperly rejected his grievances. None of Odom's arguments alter the result that he failed to properly exhaust Grievances 723 and 1237.

As an initial matter, Odom contends that the grievance process was unavailable to him in March 2020 because he was on modified access status and the grievance coordinator did not respond to his request for grievance. *See* Odom's Response (ECF No. 34, PageID.420-424). Presumably, Odom seeks to avoid the fact that he failed to properly exhaust his claim that R.N. Villasan failed to treat his burn and infection in March 2020. As discussed, Odom was not prevented from filing a grievance about this situation in July 2020; Odom's grievance was rejected because he disregarded the procedure for filing a grievance.

Now, Odom wants a "second bite at the apple" by claiming that he could not grieve the situation because he was on modified access in March 2020. Odom's claim is without merit. Prisoners are placed on modified access for abusing the MDOC's grievance process.[1]  PD

---

[1] PD 03.02.130, ¶ JJ ("Modified Access") provides as follows:

"A prisoner or parolee who files an excessive number of grievances (three within a 30 calendar day span) that are rejected or the prisoner is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph M, may have access to the grievance process limited by the Warden or FOA Region Manager for an initial period of not more than 90 calendar days. If the prisoner or parolee continues to file such grievances while on modified access, the Warden or FOA Region Manager may extend the prisoner's or parolee's modified access status for not more than an additional 30 calendar days for each violation. A recommendation to place a prisoner on modified access shall be submitted only by the Grievance Coordinator or the Grievance Section Manager and shall include a list of the

03.02.130 ¶MM (ECF No. 26-3, PageID.165) sets out the procedure by which prisoners on modified access can file grievances:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph J. The Warden, FOA Region Manager, or Manager of the Grievance Section may extend the prisoner's or parolee's modified access status for not more than an additional 30 days for each violation. Notification of such extensions shall be consistent with the requirements set forth in Paragraphs KK and LL.

The issue before the Court is whether Odom presented evidence to show that he complied with ¶ MM. *See Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446 (6th Cir. 2005) ("if a grievance officer dismissed a non-frivolous complaint by [a prisoner on modified access], that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted").

Here, Odom produced a copy of a letter which he allegedly sent to LCF Grievance Coordinator J. Rohrig on March 8, 2020, stating "I need a grievance so I can grieve HC's [Health Care's] failure to (1) timely treat the infection in my arm, and (2) examine and treat the burn on my arm." Letter (ECF No. 1-4, PageID.44). Odom also submitted a copy of a letter he sent to the LCF Warden dated March 12, 2020, stating that Grievance Coordinator Rohrig did not provide him with a requested grievance form. The Warden rejected Odom's claim as unsupported by the records. *See* Letter & Response (ECF No. 34-1, PageID.440-441). In this regard, while Odom

---

grievances forming the basis for the recommendation and the reason for the recommendation."

submitted a 35-paragraph "Declaration" opposing defendants' motion, this declaration did not address his attempts to obtain a copy of a grievance form.  Defendants' reply included an affidavit from Grievance Coordinator Rohrig stating that Odom was on modified access from January 10, 2020 to April 9, 2020, and that during this period her office did not receive any requests for Step I grievances from Odom.  *See* Rohrig Aff. (ECF No. 36-2).   Odom has failed to rebut Rohrig's affidavit.  Furthermore, as discussed *supra*, Odom had an opportunity to raise this claim in Grievance 723 but failed to properly exhaust the grievance.

Next, Odom contends that Grievance 723 was incorrectly rejected. *See* Odom's Response at PageID.424-426.  Odom's contention is without merit. As discussed, the MDOC rejected Grievance 723 for two reasons.  First, the grievance contained multiple issues.  Second, Odom failed to attempt to resolve the issue with staff prior to filing the grievance.   Odom does not address the first ground for rejecting Grievance 723.  This is a sufficient and independent basis for rejecting Grievance 723.

With respect to the second reason, Odom admitted that he did not speak to the individuals grieved before filing the grievance and simply alleged unlawful conduct:

> Because of the nature of the grievance, Grievant wasn't able to speak with the individuals involved prior to writing the instant grievance.  However, the individuals named in the body of this grievance no [sic] that falsifying, or destroying medical records is not lawful.

Grievance 723 at PageID.209.  In this regard, Odom made no attempt to speak with the individuals named in the grievance, even though he filed the grievance five days after the alleged incident date (*i.e.*, he received the FOIA request on July 22nd and filed the grievance on July 27th).  Finally, Odom claimed that the MDOC failed to follow its own policy because the Step II response was

issued by the Warden's Office rather than the Regional Medical Director's Office. As defendants point out, the rejection of the grievance was appropriate. under PD 03.02.130 ¶ Y.[2]

Next, Odom contends that Grievance 1237 was incorrectly rejected. *See* Odom's Response at PageID.427-429. Odom's contention is without merit. As discussed, the MDOC rejected Grievance 1237 for two reasons: the grievance was related to a misconduct hearing; and,Odom failed to resolve the issue with staff prior to filing the grievance. In his response, Odom claims for the first time that he attempted to resolve the issue with staff prior to filing the grievance. Odom should have raised this issue during the grievance process, not in this lawsuit. The Sixth Circuit addressed this issue in *Jessie E. Jones v. Bonevelle*, No. 11-2242 (Order) (6th Cir. March 30, 2012)[3]:

> [Prisoner] Jones also argues that the district court failed to consider that he attempted to resolve the issue before filing a grievance by sending a kite to Bonevelle on March 19, 2008. While Jones submitted the alleged kite in response to Bonevelle's renewed motion for summary judgment, he did not submit or mention the kite in his appeals from his Step I or Step II grievances, even after he was informed that his grievances were rejected for his failure to resolve the issue prior to filing the grievance forms. As the district court concluded, Jones's argument that his grievances were improperly rejected should have been made during the grievance process, not in his present civil rights action. . .

*Jones*, No. 11-2242 (Order at pp. 3-4). For these same reasons, Odom's present claim fails. This is a sufficient and independent basis for rejecting Grievance 1237.

Finally, Odom contends that the MDOC improperly rejected Grievance 1237 on the ground that it was "related to the hearing process of a misconduct". *See* Odom's Response at PageID.429-437. When a prisoner claims that staff issued a misconduct ticket in retaliation for

---

[2] *See* PD 03.02.130 . ¶ Y at PageID.162 ("If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. The Grievance Coordinator's supervisor shall review the reason for the rejection to ensure it is in accordance with policy; both the Grievance Coordinator and the supervisor shall sign the grievance before returning the grievance to the grievant.").

[3] The Sixth Circuit's Order appears as ECF No. 63 in *Jones v. Bonevelle*, No. 2:08-cv-133 (W.D. Mich.).

9

engaging in protected conduct, the prisoner must exhaust the retaliation claim by raising retaliation as a defense during the misconduct hearing and then raising retaliation in seeking an appeal or a rehearing. *See Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).

> Following *Siggers*, courts in both this district and the Eastern District of Michigan have concluded that, in order to properly exhaust a retaliatory misconduct ticket claim, the prisoner must raise that claim at the misconduct hearing and, if unsuccessful, in a motion or application for rehearing or in an appeal.

*Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 1067291 at *3 (W.D. Mich. Feb. 3, 2020) (listing cases), R&R adopted, 2020 WL 1064864 (W.D. Mich. March 5, 2020). The record reflects that Odom did not raise retaliation during the misconduct hearing or appeal. *See* Misconduct Report records (ECF No. 26-6). Accordingly, Odom's claim fails.

### IV. Recommendation

For these reasons, I respectfully recommend that defendants R.N. Vallasan and R.N. Williams' motion for summary judgment (ECF No. 25) be **GRANTED** and that they be **DISMISSED** from this action.

Dated: July 28, 2022                        /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).